UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAREFIRST OF MARYLAND, INC.<br>d/b/a CAREFIRST BLUE CROSS BLUE SHIELD,<br>a Maryland Corporation,<br><br><br>Plaintiff,<br><br><br>v.<br><br>FIRST CARE, P.C., et al<br><br><br>Defendants. | )<br>)<br>)<br>)<br>) MBD No.: 04-10217<br>)<br>) C.A. No. 2:04CV191<br>)<br>) (Pending in E.D. Va. )<br>) (Norfolk)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**EMERGENCY MOTION TO WITHDRAW MOTION TO COMPEL
AND SUPPORTING MEMORANDUM**

Defendant First Care, P.C. ("First Care") requests leave to withdraw its Motion to

Compel Production of Documents Responsive to Third-Party Subpoena, filed August 3, 2004

(the "Motion"). As set forth more fully below, this Court should allow First Care to withdraw

the Motion because: (1) on August 17, 2004, upon the court's invitation (Stillman, M.J.), First

Care submitted a similar (though broader) motion to the United States District Court for the

Eastern District of Virginia ("Eastern District"), where the underlying action is pending; [1] (2) the

parties have appeared before the Eastern District on other occasions and, as such, that Court is

already familiar with the facts and issues of this case; and (3) Magistrate Judge Stillman recently

issued a comprehensive discovery order in the case; (4) it will conserve the parties' and this

---

[1] As this Court likely knows, the Eastern District (the so-called "Rocket Docket") is a fast-moving
court. Trial is scheduled for November 2004.

Court's time and resources if First Care is allowed to withdraw its Motion and have it decided by the Eastern District.

### Basis for Emergency Filing

First Care has filed this motion to withdraw on an emergency basis because this Court has scheduled a hearing on the Motion for September 1, 2004. Thus, there is not sufficient time to file this motion in the normal course. Given the straightforward nature of this motion, and the fact that CareFirst's counsel has already been notified of this motion, First Care further requests that the Court require CareFirst to submit its opposition to this motion by Wednesday, August 25, 2004 so that the Court has sufficient time to issue its ruling prior to the September 1, 2004 hearing date.

### ARGUMENT

In further support of its motion to withdraw, First Care states as follows:

1.     In March 2004, Plaintiff ("CareFirst") commenced suit against First Care, asserting principal counts for trademark infringement and dilution.

2.     Through written discovery, First Care requested a copy of all trademark searches conducted by or on behalf of CareFirst relating to the marks CAREFIRST and FIRST CARE (the marks at issue in this case). CareFirst's counsel *denied the existence of all but one report*. In response, First Care issued a subpoena from this Court to Thomson & Thomson ("T&T"), a third-party vendor that performs trademark searches. On August 2, 2004, T&T informed First Care that it had *nine responsive search reports*, but that CareFirst's counsel had instructed it to withhold the documents on the basis that they were protected work product. Pursuant to Rule 45(c), First Care filed the Motion with this Court on August 3, 2004.

2

3.    Subsequent to filing the Motion, on August 6 and 13, 2004, the parties appeared before the Eastern District on a variety of other discovery disputes. The hearings were extensive, and the Court spent considerable time becoming familiar with the facts and legal issues in dispute.

4.    CareFirst's refusal to produce trademark search reports (on the basis of the work product doctrine) was raised at both hearings. During the August 13 hearing, Magistrate Judge Stillman invited First Care to submit a motion to the Eastern District, as that Court has the ability to order the parties (as opposed to T&T) to produce documents within their control. Because the Eastern District has the authority to evaluate CareFirst's work product claims relating to documents other than the T&T searches, and because the Eastern District is more familiar with the case, First Care submitted a separate motion to the Eastern District.

5.    Ironically, until very recently, CareFirst's counsel has pushed for the Eastern District to decide the issues raised in the Motion. Indeed, at August 6 discovery hearing, CareFirst's counsel stated:

> [W]e have exchanged some correspondence on the nature of the search reports. [First Care's counsel] claims that this is before the District of Massachusetts. *Frankly, it is for this court to look at and decide whether or not these documents are work product or not.*[2]

Four days later, on August 10, 2004, in a joint submission to the Eastern District, CareFirst's counsel again expressed its preference for having the Eastern District hear and decide the issues raised by the Motion.[3, 4]

---

[2]    *See* Exhibit 1 attached hereto (true and correct copy of pages 57-60, Transcript of Proceedings, dated August 6, 2004) (emphasis added).

[3]    *See* Exhibit 2 attached hereto (true and correct copy of a letter dated August 10, 2004).

6.    CareFirst will not suffer any prejudice if this Court grants First Care's motion to withdraw.

- First and foremost, but for the issuance of the subpoena from this Court, First Care never would have known about the existence of the T&T search reports because CareFirst's counsel claimed that *only one such search report existed*. Only after T&T admitted the existence of nine search reports, and after the Eastern District compelled CareFirst to furnish a privilege log that complied with Fed. R. Civ. P. 26, did CareFirst's counsel acknowledge the existence of the universe of responsive search reports. Had CareFirst's counsel acknowledged the existence of these search reports in a timely fashion, the subpoena (and Motion) would not have been necessary.

- Secondly, as discussed above, the issues before the Eastern District are *nearly identical* to the issues before this Court. In fact, with minor alterations, First Care submitted the same motion and memorandum of law to both courts. CareFirst can easily do the same, thereby avoiding any additional expense or spending any additional time briefing an opposition to file in the Eastern District.

- Moreover, CareFirst could have avoided any inconvenience and expense that it may claim to have incurred in connection with opposing the Motion. On August 16, 2004, First Care's counsel alerted CareFirst's counsel that he was contemplating filing a motion in the Eastern District. CareFirst's counsel ignored this letter, and instead proceeded with his filing (through local counsel).

---

*(Footnote continued from previous page)*
4    Despite these repeated representations to the Eastern District, CareFirst's counsel has reversed his position (presumably, because the Eastern District has alluded that it would likely rule in First Care's favor on the issue), and refuses to assent to this motion.

- Finally, had CareFirst complied with Local Rule 7.1 by conferring with First Care's counsel prior to filing its motion to intervene and motion for *pro hac vice* admission, it could have avoided the need to brief those issues.

## CONCLUSION

For the foregoing reasons, First Care respectfully requests that this Court grant it leave to withdraw its Motion to Compel Production of Documents Responsive to Third-Party Subpoena, filed August 3, 2004.

Respectfully Submitted,

DEFENDANTS

By their attorneys

Dated:  August 19 , 2004

_/s/ Jason C. Kravitz_____
Jason C. Kravitz, BBO No. 565904
Kristin Dulong Kuperstein, BBO No. 641710
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
Tel:  617-345-1000
Fax:  617-345-1300

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Counsel for defendants hereby certifies that on August 19, 2004 it attempted in good faith to resolve or narrow the issues presented in this motion but was unable to do so.

/s/ Jason C. Kravitz_____
Jason C. Kravitz

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19 , 2004, I caused a copy of the within document to be served by first class mail on the following:

Andrew G. Howell, Esq.
Williams Mullen PC
222 Central Park Avenue
Suite 1700
Virginia Beach, VA  23462-3035

Christopher M. Collins
Stevens Davis
1615 L Street, N.W.
Washington, DC 20036

John V. Ala
Corporate Counsel
Thomson & Thomson
500 Victory Road
North Quincy, MA  02171

____/s/ Jason C. Kravitz_____
Jason C. Kravitz

# EXHIBIT 1

1

1      IN THE UNITED STATES DISTRICT COURT

2      FOR THE EASTERN DISTRICT OF VIRGINIA

3      Norfolk Division

4

5   CAREFIRST OF MARYLAND, INC.,          )
    etc.,                                 )
6                                         )
              Plaintiff,                  )
7                                         )          CIVIL ACTION
        v.                                )
8                                         )          NO. 2:04cv191
    FIRST CARE, P.C., et al.,             )
9                                         )
              Defendants.                 )
10

11              TRANSCRIPT OF PROCEEDINGS

12                 Norfolk, Virginia

13                 August 6, 2004

14

15

16   Before:   THE HONORABLE F. BRADFORD STILLMAN
               United States Magistrate Judge

17

18   Appearances:

19          STEVENS DAVIS MILLER & MOSHER
            By:  CHRISTOPHER M. COLLINS
20          WILLIAMS MULLEN
            By:  ANDREW G. HOWELL
21              Counsel for the Plaintiff

22          NIXON PEABODY LLP
            By:  JASON C. KRAVITZ
23          TAYLOR & WALKER, P. C.
            By:  BRIAN N. CASEY
24              Counsel for the Defendants

25

1    work that out.

2        MR. COLLINS:  I think that's the introduction for us

3    to discuss what more needs to be done.  As Mr. Kravitz alluded

4    to, on the face of that privilege log are the names of the

5    attorneys in my office as well as our client.  It is pretty

6    self-evident.  We have not addressed, and I think it needs to

7    be addressed, this idea that there is work product that he is

8    either unaware of or it is unclear from this log.

9        We have had long discussions, and we have exchanged

10   some correspondence on the nature of the search reports.  He

11   claims that this is before the District of Massachusets.

12   Frankly, it is for this court to look into and to decide

13   whether or not these documents are work product or not.  I

14   think this is an end around trying to get a more favorable

15   court and forum shopping by going to our service provider --

16   you may be familiar with Thompson & Thompson; it is a search

17   company -- and serving a subpoena on our service provider, who

18   provides us with our work product.  We will scope out a

19   request, a search, and they will essentially conduct the

20   ministerial search for us at our direction.  I think it is

21   important, and we went into it briefly in the papers, but let

22   me expand a little bit on this work product idea.

23       There are two types of search reports that we

24   conduct.  One are what we call clearance opinions.  It is when

25   we are looking at a new mark, and we want to see if there is

58

1    anyone out there using that.  That is a factual search.  We

2    are not anticipating litigation into the underlying search.

3    And those are relevant -- to the extent they are relevant,

4    they are discoverable, and we have in this instance produced,

5    I believe, two of those reports, based on our time line.

6        We have withheld certain documents that are what we

7    call investigatory reports.  What those are, Your Honor, is

8    when we are either looking to make sure we are policing the

9    mark properly or we are looking for targets to send cease-and-

10    desist letters or to actually file against, we conduct a

11    particular search looking for those entities and certain types

12    of criteria.  Those searches are what we base our advice to

13    the client on.

14        Essentially what you have, Your Honor, is -- think

15    of it, if you will, as a frame or part of a puzzle mosaic in

16    which publicly available documents or discoverable documents

17    such as we have given, the cease-and-desist letters, which I

18    will address again in a moment -- those are discoverable.

19    They are out there.  People know the date and the name and the

20    type of mark we have gone after, the type of services.  Also

21    the same thing with any public proceedings, federal court or

22    TTAB proceedings, people know that.

23        What they don't know is that center part, the actual

24    search that we conducted.  And I believe if you put that in,

25    you can then extrapolate from that our advice to our clients.

GLORIA S. SMITH, OFFICIAL REPORTER

1  That is the workings of our strategy in conducting the search

2  and then policing our mark.  And that's where I believe we get

3  to work product.

4         THE COURT:  Well, you are trying to say if the

5  search results that you obtained pursuant to your

6  investigation to police your mark or identify targets -- if

7  that list is produced and there is not along with it a

8  cease-and-desist letter or a proceeding, that it can be

9  inferred that you advised your client not to proceed.

10        MR. COLLINS:  Correct.  But more importantly even

11  than the ones not to proceed are the ones where we chose to

12  proceed, and it is that combination of all those --

13        THE COURT:  Isn't it self-evident that you advised

14  them that you were going to proceed, if a cease-and-desist

15  letter exists?

16        MR. COLLINS:  Exactly, for those -- for the ones

17  that we do proceed, you are right.

18        THE COURT:  I have to tell you, my general

19  inclination here is to tell you that these reports ought to be

20  produced.  You are charged with the obligation of policing

21  your mark.  To the extent that you identify targets and ignore

22  them, that's got to count for something.  That has got to be

23  relevant to the question of the adequacy of your policing, the

24  strength of your mark.  And why that mere list of potential

25  targets is somehow privileged, I have some question.

60

1          MR. COLLINS:  Let me expand a little bit on it, Your

2     Honor.  This may help.

3          The list -- the search report is not just the list,

4     it is the actual logic of the search; that is, how we go about

5     looking at and how we search and what we are searching for, in

6     terms of what we are going to find, what kind of hits are

7     going to be brought up, and that search logic, in addition to

8     the actual report.

9          If I may note, the TTAB in this First Health

10     proceeding addresses the exact question, and recognized -- it

11     is a recognized distinction between the investigative versus

12     the clearance.  The investigative has always been considered

13     as part of the work product.  It's designed by the attorney,

14     it's conducted by the attorney, it is produced for the

15     attorney.

16          THE COURT:  How much of this information are you

17     going to use at trial to demonstrate that you adequately

18     policed your mark?

19          MR. COLLINS:  Zero.  We don't need to use it, Your

20     Honor.  We have identified who we have policed.  We have

21     identified who we sought in terms of clearance opinions.  We

22     have already given those search reports.

23          THE COURT:  All right.  I think I have your

24     argument.  Let's move on to the next point.

25          By the way, are the search reports identified in a

GLORIA S. SMITH, OFFICIAL REPORTER

**EXHIBIT 2**



BRIAN N. CASEY **TAYLOR** AND **WALKER** P.C.
BCASEY@TAYLORWALKERLAW.COM

August 10, 2004

AUG 1 3 2004

WILLIAM C. WALKER

GERARD E. W. VOYER

JAMES E. BRYDGES, JR.

JOHN FRANKLIN, III

HENRY M. MASSIE, JR.

BRIAN N. CASEY

JAMES C. MCCAA, III

PATRICIA C. ARRIGHI

DONNA WHITE KEARNEY

MARK E. KILDUFF

DOUGLAS E. PENNER

KEVIN D. SHARP

CHRISTOPHER J. WIEMKEN

DAVID L. LITTEL

MATTHEW P. MORKEN

DARREN T. MARTING

⬤RY T. O'HALLORAN

J. HUME TAYLOR, JR.
OF COUNSEL

DIANA L. WHITE
ADMINISTRATOR

The Honorable F. Bradford Stillman
United States District Court
U.S. Courthouse
600 Granby Street, Room 193
Norfolk, Virginia 23510-2449

Re:    Carefirst of Maryland, Inc. d/b/a Carefirst Blue Cross Blue Shield, a
       Maryland corporation v. First Care, P.C., a Virginia Professional
       corporation
       Civil Action No. 2:04cv191

Dear Judge Stillman:

Pursuant to your request, the parties met and conferred immediately after the
August 6 hearing and attempted to resolve, or at least narrow, some of the
discovery disputes. A follow-up telephone conversation between counsel took
place on August 9. Counsel have agreed to submit this letter report. While we
are pleased to state that the parties have made some progress, several issues
remain and require a ruling from the Court.

**Pre-1998 Documents**

CareFirst has now agreed to produce documents from January 1, 1995 (the
approximate date of defendants' first use of the mark in commerce).

After the August 6 hearing, CareFirst's counsel agreed to look for and, if they
exist, produce documents reflecting CareFirst's expenditures for
advertising/promoting the mark CAREFIRST from 1992-present.

This issue appears to be resolved with the exception of documents reflecting
CareFirst's awareness of third party use of the marks CAREFIRST or FIRST
CARE. First Care continues to maintain that third party use of these marks in the
mid-1980s and early 1990s is relevant to rebut CareFirst's claim that its mark was
famous and distinctive as of January 1, 1995 and to determine whether CareFirst
failed to disclose its awareness of third party users to the Patent and Trademark
Office when it applied to register the CAREFIRST mark in the mid-1980s.

CareFirst maintains that such a period is overly broad in the context of the claims
and defenses presented. In addition, CareFirst believes that its compromise to
produce documents from January 1, 1995 addresses First Care's concerns.

NORFOLK
555 MAIN STREET, SUITE 1300
POST OFFICE BOX 3490
NORFOLK, VIRGINIA 23510
T 757 625-7300
F 757 625-1504

⬤OND
6⬤2 PARAGON PLACE
SUITE 126
RICHMOND, VIRGINIA 23230
T 804 673-0341
F 804 673-2001

WWW.TAYLORWALKERLAW.COM

TAYLOR AND WALKER P.C.

The Honorable F. Bradford Stillman
August 10, 2004
Page 2

First Care requests an Order compelling CareFirst to produce all documents
showing CareFirst's awareness of third party use of the marks CAREFIRST or
FIRST CARE from 1985-present.

CareFirst seeks an order accepting its proffered compromise and denying First
Care's motion.

**Pre-1998 Brand Awareness/Image Studies**

CareFirst's counsel has indicated that he is attempting to locate brand
awareness/image studies for 1995, 1996, and 1997.

Given the importance of these documents, First Care requests an Order
compelling their immediate production.

CareFirst states that an Order to compel is unnecessary and improper in light of
CareFirst's compromise to produce additional documents voluntarily.

**CareFirst Cease and Desist Letters**

At CareFirst's request, First Care's counsel reviewed CareFirst's document
production to compile a list of any cease and desist letters that appear not to have
been produced. First Care's counsel did this and sent CareFirst's counsel a list of
21 entities that were identified in response to Interrogatory No. 17 but for whom
no cease and desist letters were produced. CareFirst's counsel states that he is
attempting to locate these missing letters.

CareFirst remains unwilling to identify third party users of the marks
CAREFIRST or FIRST CARE (or variants thereof) that CareFirst was aware of
prior to January 1, 1995 but whom CareFirst did not target with a cease and desist
letter (or legal action). CareFist maintains that the identity of such users prior to
January 1, 1995 is not relevant to any issue before the Court. CareFirst has
produced responsive documents, excluding those protected by privilege.

First Care requests an Order compelling the production of all cease and desist
letters CareFirst sent concerning the marks CAREFIRST or FIRST CARE and
compelling CareFirst to identify all known third party users of the marks
CAREFIRST or FIRST CARE, regardless of whether those companies were
targeted with a cease and desist letter.

TAYLOR AND WALKER P.C.

The Honorable F. Bradford Stillman
August 10, 2004
Page 3

CareFirst seeks an Order denying First Care's motion as mooted by CareFirst's compromise.

**Lexis-Nexis Searches**

CareFirst has agreed to review the Lexis-Nexis searches it produced and, if such documents exist, to produce any portions of those searches that were not previously produced.

While this issue is resolved for now, First Care reserves the right to challenge the future admissibility of the Lexis-Nexis search reports for lack of completeness (among other reasons).

**CareFirst's Privilege Log**

CareFirst will furnish a revised privilege log that satisfies Rule 26(b)(5) and contains all documents that CareFirst is withholding on the basis of a privilege (or the work product doctrine) from January 1, 1995 to the present, along with a specific statement explaining the basis for the asserted privilege.

First Care seeks an Order compelling the immediate production of this privilege log.

CareFirst maintains that an Order is unnecessary in light of its agreement.

**Trademark Search Reports**

CareFirst's counsel has agreed to produce one (and possibly two) additional trademark search report. CareFirst continues to withhold the other search reports on the basis of the work product doctrine. First Care has filed a motion to compel the production of these reports in the District of Massachusetts. CareFirst is prepared to present this issue to the Court if the Court so directs.

**Identity of Patient Names**

CareFirst has agreed to produce documents sufficient to show the coded identity of all CareFirst members who allegedly received medical treatment from physicians affiliated with First Care. CareFirst believes that its records show 93 such instances, although it is unclear whether this reflects 93 separate members/patients.

TAYLOR AND WALKER P.C.

The Honorable F. Bradford Stillman
August 10, 2004
Page 4


First Care's administrator again attempted to identify any First Care patients who were CareFirst members, but its database does not contain any indication of having provided medical services to CareFirst members.

Once CareFirst produces the information, First Care will attempt to locate corresponding records in its files.

We hope this letter assists you and we thank you for your consideration of these matters.

Very truly yours,

TAYLOR & WALKER, P.C.

Brian N. Casey

BNC/ssv
cc:     Craig Lawrence Mytelka, Esquire (via telefax 473-0395)
        Andrew G. Howell, Esquire
        Christopher M. Collins, Esquire (via telefax 202-408-5200)
bcc:    Jason C. Kravitz, Esquire